

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ENTERED
11/15/2011

| | | |
|---|---|---|
| IN RE: | § | |
| DARREN JACKSON, | § | Case No. 10-36961 |
| Debtor(s). | § | |
| | § | Chapter 13 |
| | § | |
| DARREN JACKSON, | § | |
| Plaintiff(s) | § | |
| | § | |
| VS. | § | Adversary No. 10-03394 |
| | § | |
| R.D. AFFORDABLE FOREIGN AUTO REPAIR, | § | |
| | § | |
| Defendant(s). | § | Judge Isgur |

## ORDER AND MEMORANDUM OPINION

This Order and Memorandum Opinion addresses the reasonable amount of legal fees to award a Plaintiff who (i) behaved inequitably prior to filing bankruptcy, (ii) demanded an unreasonable amount in damages that likely prevented settlement and increased overall legal fees, (iii) lied to the Court at trial, and (iv) requested legal fees for amounts that would have been spent notwithstanding this adversary proceeding. The Court reduces the amount of requested legal fees and awards $7,264.88.

### Factual Background

R.D. Affordable Foreign Auto Repair ("R.D. Auto") repossessed Jackson's automobile prior to bankruptcy. Jackson owed R.D. Auto money for services performed on the automobile. Ware, owner of R.D. Auto, went to extraordinary lengths to accommodate Jackson's precarious financial situation, but eventually repossessed the automobile for nonpayment. Jackson paid nothing on the amount owed for many months prior to bankruptcy, despite being employed. Simply put, Jackson took advantage of Ware's kindness and, understandably, Ware eventually became quite upset. This

does not excuse Ware's refusal to turn over the automobile after Jackson filed for bankruptcy. Ware's violation of the automatic stay was egregious—at one point disregarding a court turnover order until a United States Marshall appeared to retrieve the automobile.

Jackson filed this adversary proceeding against Ware. Ware filed an answer in which he admitted violating the automatic stay.[1] A settlement could not be reached. At trial, Jackson asked for $6,345 in actual damages and $19,305 in punitive damages. The Court found only $1,460 in actual damages. Noting Ware's serious automatic stay violation, but also taking into account Jackson's inequitable pre-bankruptcy conduct, the Court awarded $1,460 in punitive damages.[2] This was the minimum amount of punitive damages the Court thought could be awarded given the nature of Ware's automatic stay violation.

At a subsequent hearing, Jackson requested $25,197.51 in legal fees. The Court took the matter under advisement.

## Analysis

Jackson improperly included amounts that would have been spent on legal fees notwithstanding this adversary proceeding. The Court finds these amounts total $515.54 and will deduct them from the fee award.

At the hearing Jackson admitted $192.50 in locksmith fees were mistakenly included. This amount will be deducted from the fee award.

All fees incurred from the drafting of the complaint until Ware's admission of the automatic stay violation were necessary and reasonable. The Court finds these amounts total $5,265.54 and will allow them in full.

---

[1] The answer did state that the automatic stay violation was not "willful." Of course, one does not have to specifically intend to violate the automatic stay for a violation to nevertheless be "willful." The Court found the violation to be willful. The impact of this disputed issue on the award of attorney's fees is addressed below.

[2] Jackson asked for $25,650 and received $2,920 in damages, or a little more than 11% of the amount requested.

During the hearing, the Court expressed concern that Jackson inappropriately ran up legal fees because only the issue of damages remained after Ware admitted to the violation. Approximately eighty percent of all requested legal fees were expended after this admission of liability. In a brief filed in response to the Court's concerns, Jackson argued the fees are reasonable because: 1) while Ware admitted to violating the stay, he did not admit the violation was willful, and 2) until late spring 2011 Ware intimated he was going to depose his prior attorney,[3] thereby increasing Jackson's legal fees in preparation for the deposition. These are valid arguments but apply to only a small fraction of the legal fees yet to be addressed by the Court. All remaining legal fees fall into three categories and will be treated as follows:

- Post-answer legal fees directly related to settlement will be denied in full.[4] The Court finds this amount to be $895.50.

- Post-answer legal fees directly related to proving the willful nature of the violation or to preparing for the deposition of Ware's former attorney will be allowed in full. The Court finds this amount to be $185.00.

- All other post-answer legal fees will be allowed in the amount of 10% of those requested. These amounts total $18,143.43, of which 10% is $1,814.34.

### Conclusion

The Court awards Jackson legal fees in the amount of $7,264.88.

SIGNED **November 15, 2011.**

Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE

---

[3] Apparently Ware believed deposing his attorney would prove that the violation was not "willful."

[4] Jackson grossly overstated his actual damages. Jackson requested an astronomical amount of punitive damages at trial. Jackson's prepetition conduct makes such a large punitive damage request all the more unreasonable.